UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JORGE RODRIGUEZ-RAMOS,

     *Petitioner*,

v.                                                          Case No. 3:26-cv-658-JEP-LLL

WARDEN, BAKER COUNTY
DETENTION CENTER, et al.,

     *Respondents*.

_____/

## **ORDER**

Petitioner, an immigration detainee at Baker Correctional Institute, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 on March 26, 2026. (Doc. 1). Petitioner argues that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 6-7). He asks the Court to order his immediate release. (*Id.* at 7).

The Federal Respondents (U.S. Immigration and Customs Enforcement ("ICE") and U.S. Department of Homeland Security ("DHS")) filed a response in opposition to the petition. (Doc. 6). Respondent Warden, Baker County Detention Center filed a motion to dismiss arguing that he is not a proper respondent. (Doc. 5). Upon review of the parties' filings, the Court finds that a reply is unnecessary and the petition must be granted.

## I.

Petitioner, a citizen of Cuba, entered the United States on April 27, 1995, and was admitted as a parolee. (Doc. 6-1 at 2). On July 3, 2003, an immigration judge ordered Petitioner removed from the United States to Cuba. (*Id.*). On or about July 30, 2004, Petitioner was released from ICE custody on an order of supervision ("OSUP"). (*See* Doc. 6-3 at 2). On August 27, 2025, ICE re-detained Petitioner. (Doc. 1 at 2, 4; Doc. 6-4 at 1). On September 17, 2025, ICE attempted to remove Petitioner to Mexico, but "Petitioner resisted removal." (Doc. 6-5 at 1-2). More than six months after his re-detention, ICE formally revoked Petitioner's OSUP and provided him with an informal interview. (*See* Doc. 6-3; Doc. 6-5 at 1). On March 31, 2026, ICE issued "a "Warrant of Removal/Deportation" that Petitioner apparently refused to sign. (Doc. 6-6 at 1-2). According to a deportation officer:

> ICE intends to remove the [P]etitioner to Mexico[.]
>
> Petitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.
>
> Petitioner will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office.
>
> The receiving [Enforcement and Removal Operations] field office will then notify Mexico's Instituto Nacional de Migracion (INM) of the [P]etitioner's upcoming removal to Mexico.

> Following INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.
>
> Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.
>
> ICE will follow proper procedures for third-country removals for the [P]etitioner as set forth in the Guidance Regarding Third Country Removals, issued by the DHS Secretary on March 30, 2025.
>
> Based on the aforementioned and continued engagement, there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

(Doc. 6-5 at 2).

The Court first addresses the motion to dismiss, followed by a discussion of the merits.

## II.

In the motion to dismiss, the Warden requests the Court "dismiss [him] from this proceeding with prejudice" as an improper respondent. (Doc. 5 at 12). He argues that ICE is Petitioner's "'immediate custodian'" and "the director of ICE's local field office responsible for the [detention facility housing Petitioner] – not its 'warden' – is the proper respondent." (*Id.*).

In an order issued on April 14, 2026, this Court addressed the same arguments and denied the warden's motion to dismiss. *See Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-180-JEP-SJH, 2026 WL 1004569,

at *2–3 (M.D. Fla. Apr. 14, 2026). For the same reasons outlined in *Lanvin-Valdez*, the Court will deny the motion to dismiss in this case.

## III.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[1] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

---

[1] Although district court orders are non-precedential, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient

evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

## IV.

The Federal Respondents do not dispute that when Petitioner filed this case, he had been in ICE custody for over six months following his order of removal. (Doc. 6 at 6). ICE re-detained Petitioner on August 27, 2025, and he filed this case 211 days later on March 26, 2026. As such, the Federal Respondents concede—and the Court finds—that Petitioner's six-month period expired prior to filing this case.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2003, but he was released on an OSUP because ICE was unable to remove him at that time. He has now been detained for approximately eight months, and he contends that his removal is not reasonably foreseeable, because "ICE lacks documentation to execute removal," such as travel documents or confirmation from another country that it is willing to accept him. (Doc. 1 at 6-7). Thus, the burden shifts

6

to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

The record is devoid of any evidence showing the actions ICE has taken to effectuate Petitioner's removal since September 17, 2025, when ICE claims Petitioner "resisted removal" to Mexico. The Federal Respondents rely on the deportation officer's declaration regarding "the next steps to allow ICE to remove Petitioner to Mexico," and conclude that "[t]he officer also attested that 'there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.'" (Doc. 6 at 8 (quoting Doc. 6-5 at 2)). But that declaration merely describes the general process for third-country removals to Mexico—there is no specific timeline provided for Petitioner's alleged removal. Nor is there any indication about whether Mexico will provide "final acceptance" of Petitioner. (Doc. 6-5 at 2 ("Following INM's final acceptance . . . .")). Petitioner has now been in ICE custody for approximately eight months with ICE being unable to remove him or otherwise provide more specific details on when he will be removed.

Based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall

be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

Accordingly, it is **ORDERED**:

1. Respondent Warden, Baker County Detention Center's motion to dismiss (Doc. 5) is **DENIED**.

2. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim. Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on April 22, 2026.

_____
JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Jorge Rodriguez-Ramos
Counsel of Record

9